United States Court of Appeals,

Fifth Circuit.

No. 93-1907

Summary Calendar.

Thomas W. WILSON, Plaintiff-Appellant,

v.

Davis W. BELIN and G. Robert Blakey, Defendants-Appellees.

May 13, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The question presented in this case is whether a federal district court sitting in Texas has personal jurisdiction over two out-of-state defendants. In fact, none of the parties are Texas residents. The plaintiff, a Pennsylvania resident, filed this defamation suit in Texas state court against an Indiana resident and an Iowa resident. The genesis of this lawsuit is in a speech the plaintiff made in Dallas concerning the Kennedy assassination. A Dallas reporter telephoned the defendants in Indiana and Iowa, respectively, for a response to the speech. The reporter then purportedly quoted the defendants' reactions in a newspaper article. The plaintiff claims that the defendants' negative remarks libeled him in Texas. After removal, the federal district court dismissed the case for lack of personal jurisdiction. We affirm.

I

1

The plaintiff, Thomas W. Wilson, is a Pennsylvania resident, who used photographic image processing technology in his job as an engineer for U.S. Steel Corporation. Wilson began applying certain imaging technology—on his own time—to photographs of the assassination of President John F. Kennedy. Wilson claimed that his computer enhancements revealed a second gunman on the "grassy knoll" and revealed that a photograph of Lee Harvey Oswald with a rifle had been tampered with. On November 15, 1991, Wilson spoke at a symposium in Dallas, Texas, on the Kennedy assassination and presented his "revelations."

During the symposium, Mark Potok, a reporter for the *Dallas Times Herald,* telephoned Robert Blakey, who served as chief counsel and staff director of the House Select Committee on Assassinations, to discuss Wilson's conclusions. The reporter also called David Belin, who served as assistant counsel to the Warren Commission to discuss Wilson's comments. Both Blakey and Belin received the calls in their respective states of residence—Indiana and Iowa.

On November 16, 1991, the *Dallas Times Herald* published an article written by Mr. Potok that quoted Mr. Blakey as saying, "You know the saying among computer people, "Garbage in, garbage out?' This is garbage." The article quoted Mr. Belin as saying, "It's a series of massive lies. The man is basically making an outrageous claim."

II

On September 3, 1992, Wilson filed a bill of discovery in Texas state court to depose Potok to determine if he misquoted

Blakey and Belin before instituting suit against them. On November 13, Wilson filed a defamation suit against Blakey and Belin in Texas state court. The suit and the original petition were received by the Texas Secretary of State, as agents for the nonresidents, on November 23. On December 22, Blakey and Belin filed a joint notice of removal citing diversity of citizenship.

On September 2, 1993, the district court granted Blakey and Wilson's motion to dismiss the case on the grounds that the court lacked specific and general personal jurisdiction over them. Wilson filed this appeal.

                                    III

In a diversity suit, a federal court has personal jurisdiction over a nonresident defendant to the same extent that a state court in that forum has such jurisdiction. *Bullion v. Gillespie,* 895 F.2d 213, 215 (5th Cir.1990); Fed.R.Civ.P. 4(e). The reach of this jurisdiction is delimited by: (1) the state's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the federal Constitution. *Bullion,* 895 F.2d at 215. Because the Texas long-arm statute extends to the limits of federal due process,[1] our two-step inquiry is reduced to an analysis of

_____

[1] The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents "doing business," which includes committing a tort in whole or in part, in Texas. Tex.Civ.Prac. & Rem.Code Ann. § 17.02 (Vernon 1986). The Texas Supreme Court has interpreted the "doing business" requirement broadly, allowing the long-arm statute to reach as far as the federal Constitution permits. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). Further, for purposes of the jurisdictional issue only, Blakey and Belin concede that a tort was committed in whole or in part in Texas via the publication of the newspaper article in a Texas newspaper. Thus, the outcome of this case turns wholly on the

3

whether requiring Blakey and Belin to defend a defamation suit in Texas would impinge on their individual liberty interests—not to be subjected to suits in a distant forum with which they have little connection—that are protected by the Due Process Clause.[2]  *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982) (stating that the restriction on state power to subject a nonresident to suit is "ultimately a function of the individual liberty interest preserved by the Due Process Clause").

The exercise of personal jurisdiction over a nonresident will not violate due process principles if two requirements are met. First, the nonresident defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945);  *Bullion,* 895 F.2d at 216.  And second, the exercise of jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice."  *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (citing *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158).

The "minimum contacts" prong of the inquiry may be further subdivided into contacts that give rise to "specific" personal

_____

federal constitutional reach of personal jurisdiction.

[2]The Due Process Clause provides, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

4

jurisdiction and those that give rise to "general" personal jurisdiction. Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984); *Bullion,* 895 F.2d at 216. General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both "continuous and systematic." *Helicopteros,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9; *Bullion,* 895 F.2d at 216.

If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the "fairness" prong of the jurisdictional inquiry is satisfied. *See Asahi,* 480 U.S. at 105, 107 S.Ct. at 1033; *Bullion,* 895 F.2d at 216. The Supreme Court has stated that the "fairness" of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including the "interests of the forum State."[3] *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033.

---

[3]The factors considered in the fairness inquiry are:

> [T]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies."

*Bullion,* 895 F.2d at 216 n. 5 (citing *Asahi,* 480 U.S. at

5

IV

When the facts are not in dispute, we review *de novo* a district court's determination that its exercise of personal jurisdiction over a nonresident defendant is proper. *Bullion,* 895 F.2d at 216. "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985). When the district court rules on the motion without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper. *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Bullion,* 895 F.2d at 217 (quoting *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 545 (5th Cir.1985)).

A

Wilson first argues that the district court had specific personal jurisdiction over Blakey and Belin because each of them spoke with a Texas newspaper reporter and thus reasonably could

---

113, 107 S.Ct. at 1033 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980))).

foresee that their defamatory comments would be published in Texas and injure Wilson's reputation in Texas. Wilson argues that *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984) clearly stands for the proposition that whenever the effects of libel by a nonresident are felt in the forum state, specific jurisdiction exists. We believe Wilson reads *Calder* too broadly.[4]

In *Calder,* 465 U.S. at 788-90, 104 S.Ct. at 1486-87, a reporter for a Florida publication researched a story in California, wrote a story about a California resident whose career was centered in California, and provided that story to his (the defendant reporter's) employer, which had a substantial portion of its national circulation in California. The Court stated that the defendants' (the reporter's and his editor's) "actions were expressly aimed at California" because they wrote and edited "an article that they knew would have a potentially devastating impact upon [the plaintiff in California]." *Id.* at 789, 104 S.Ct. at 1487. In the instant case, however, neither Blakey nor Belin did any preparation for a story to defame the plaintiff. They did not even write or devise a story. They did no research regarding Wilson's theory in Texas or elsewhere. Furthermore, there is no indication that these defendants were paid for their comments, that their comments were part of a planned business venture, or that such unsolicited comments served any role in advancing their

---

[4]We also note that First Amendment considerations regarding the defendants' abilities to inject their respective opinions into the marketplace of ideas on a topic of obvious public concern are not relevant to our wholly jurisdictional inquiry. *Calder,* 465 U.S. at 790-91, 104 S.Ct. at 1487-88.

7

business careers. Finally, the plaintiff, Wilson, is not a Texas resident and his career is not centered there. Thus, the dispositive facts in *Calder* simply are absent from this case.

Wilson also places great weight on the premise that a libelous tort is deemed to have occurred where the offending material is circulated. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984) (citing Restatement (Second) of Torts § 577A, Comment *a* (1977)). This principle alone, however, will not win the day for Wilson. That the tort is deemed to have occurred in whole or in part in Texas is simply not dispositive of whether jurisdiction is appropriate. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 288-89, 100 S.Ct. 559, 562-63, 62 L.Ed.2d 490 (1980) (holding that although tort occurred in Oklahoma, New York defendant was not subject to personal jurisdiction in Oklahoma by nonresident plaintiff).

Wilson also argues foreseeability as a basis for specific personal jurisdiction. The defendants, he argues, could foresee that the defamatory remarks would be published in Texas. The Supreme Court has stated, however, that:

> "[F]oreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.... [T]he foreseeability that is critical to due process analysis is ... that the defendant's conduct and connection with the forum State are such that he should *reasonably anticipate being haled into court there.*

*World-Wide Volkswagen,* 444 U.S. at 295, 297, 100 S.Ct. at 566, 567 (citations omitted) (emphasis added).

In this connection, the Supreme Court has held that a defendant could "reasonably anticipate being haled into court" when

8

he "purposefully directed" his activities and contacts into the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). In *Burger King, id.,* the defendant had "purposefully directed" activities into the forum state when he mailed communications to the plaintiff's headquarters in the forum state, promised to send money into the forum state, and agreed to allow the forum state's law to govern the contract in dispute. Here, by contrast, Blakey and Belin took no planned action to inject themselves or their opinions into the Texas forum. Each simply received one unsolicited phone call from Texas. They sent no money or materials into Texas, and neither ever bound themselves to Texas law—even implicitly—concerning the disputed photographic interpretations in this case.

Similarly, the facts in the instant case are distinguishable from *Brown v. Flowers Indus., Inc.,* 688 F.2d 328 (5th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983), where we held that personal jurisdiction in Mississippi was proper over an out-of-state resident who made a phone call to Mississippi to defame a Mississippi resident. In so holding, we emphasized that the defendant initiated the defamatory phone call. *Id.* at 334 & n. 15 (differentiating *McBreen v. Beech Aircraft Corp.,* 543 F.2d 26, 31 (7th Cir.1976), in which the court held that jurisdiction was improper, in part, because the defendant did not initiate the phone call). Here, the defendants did not execute a prearranged plan by initiating a communication to Texas aimed at a Texas resident. Instead, Blakey and Belin, while sitting unsuspectingly

9

in their respective offices in Indiana and Iowa, merely answered one uninitiated and unsolicited phone call asking about their opinion of a Pennsylvania resident's theory.  We hold that the assertion of specific personal jurisdiction over Blakey and Belin would deprive them of the due process liberty interest not to be subjected to suit in a distant forum with which they have little connection.

B

Next, Wilson argues that the district court has general personal jurisdiction over Blakey and Belin because of the unrelated contacts each had with Texas.  In resolving this issue we first turn to the Supreme Court's seminal case on this point: *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).  In *Perkins, id.* at 438, 72 S.Ct. at 438, the Supreme Court upheld the district court's exercise of general personal jurisdiction in Ohio over a Philippine corporation that had temporarily relocated to Ohio.  The Court held that the corporation's general contacts with Ohio, although unrelated to the cause of action, would support the exercise of general personal jurisdiction because they were "continuous and systematic." *Id.* Some twenty years later, in *Keeton,* 465 U.S. at 779 n. 11, 104 S.Ct. at 1481 n. 11, the Supreme Court gave a concise explanation of why general jurisdiction was appropriate in *Perkins.*  The *Keeton* Court, emphasized that unrelated contacts must be "substantial" in order to support general jurisdiction:

> In *Perkins,* ... [the corporation's] president, who was also general manager and principal stockholder of the company,

10

returned to his home in Ohio where he carried on "a continuous and systematic supervision of the necessarily limited wartime activities of the company...."  The company's files were kept in Ohio, several directors' meetings were held there, substantial accounts were maintained in Ohio banks, and all key business decisions were made in the State....  In those circumstances, Ohio was the corporation's principal, if temporary, place of business so that Ohio jurisdiction was proper even over a cause of action unrelated to the activities in the State.

*Id.* (citations omitted).[5]

In the instant case, Wilson argues that the assertion of general personal jurisdiction over Blakey is warranted because of his various unrelated contacts with Texas.  Wilson first points to Blakey's relationship with a Texas law firm.  Blakey carried his

---

[5]*Keeton* was an unusual case, as scholars have noted, because the Supreme Court used a blend of related and unrelated contacts to uphold personal jurisdiction.  *See* GENE R. SHREVE & PETER RAVEN-HANSEN, UNDERSTANDING CIVIL PROCEDURE § 19A (1989).  In *Keeton,* 465 U.S. at 772, 104 S.Ct. at 1477, an Ohio publishing corporation had only a small part of its monthly national circulation in New Hampshire.  The Supreme Court reasoned that if these magazine sales were unrelated to the cause of action, they would be insufficient to warrant the exercise of personal jurisdiction.  *Id.* at 779, 104 S.Ct. at 1481.  The *Keeton* Court distinguished *Perkins* on the grounds that "[t]he defendant corporation's contacts with the forum State in *Perkins* were more *substantial* than those of [the publisher] with New Hampshire in this case."  *Id.* at 779 n. 11, 104 S.Ct. at 1481 n. 11 (emphasis added).  Other cases have echoed the substantiality requirement.  *See, e.g., Helicopteros,* 466 U.S. at 471, 418-19, 104 S.Ct. at 1873-74 (refusing to uphold general jurisdiction over a foreign corporation that negotiated a contract in, purchased equipment from, and had its employees trained in the forum state because such activity did not constitute continuous and systematic unrelated contacts); *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 779 (5th Cir.1986), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987) (upholding general jurisdiction over a nonresident defendant that attended college in, owned real estate in, travelled to, and conducted extensive business dealings in the forum state to such an extent that, *in toto,* his contacts evidenced "constant and extensive personal and business connections with [the forum state] throughout [the nonresident defendant's] adult life").

malpractice insurance through the Texas firm for less than a year. The record makes clear, however, that Blakey performed no work for and received no compensation from that firm. Wilson also points out that Blakey performed approximately one legal project per year—each for a different firm—in Texas for three years prior to the institution of this suit and gave a legal seminar in Texas. Additionally, Blakey served, in a limited capacity, as a *pro bono* consultant to a historical society in Dallas for several years; in this connection, he made two trips to Dallas, one in 1988 and one on opening day—February 21, 1989.[6] Further, Blakey wrote a letter to the editor that appeared in a Texas newspaper, and he wrote a book that was circulated, in part, in Texas. Finally, he gave a few interviews to Texas reporters over the years.

Wilson also asserts that Belin had a number of unrelated contacts with Texas that will support the exercise of general personal jurisdiction over him. Wilson points out that, in the last five years, Belin made a few trips to Texas during which he gave interviews concerning the Kennedy assassination. On one occasion, during a several-hour layover at a Dallas airport, Belin visited the Texas School Book Depository. Wilson further points out that on another occasion Belin engaged in discussions with an investment banking firm in Texas on behalf of a nonresident corporation in which he owned a small interest and served as

_____

[6]The "Sixth Floor Project" established a museum on the sixth floor of the Texas School Book Depository from which Lee Harvey Oswald is alleged to have fired the shots that fatally wounded President Kennedy.

12

secretary.  Belin also wrote three books that were circulated, in part, in Texas.  Finally, he wrote an article for the *Washington Post* that was reprinted in a Texas newspaper.

Our examination of Blakey's and Belin's activities in Texas, *in toto,* leads us to the conclusion that their unrelated contacts with Texas were not as "continuous and systematic" and, in any event, were not as "substantial" as the nonresident defendant's contacts in *Perkins.*  We simply cannot say that because of these various brief contacts with Texas that either of these defendants should have reasonably expected to be sued in Texas on any matter, however remote from these contacts.  They simply were not substantial enough to give rise to such an expectation.[7]  Neither Blakey nor Belin conducted regular business in Texas.  They never made all or even a substantial part of their business decisions in Texas, did not keep bank accounts in Texas, did not hold directors' meetings in Texas, and did not maintain their files in Texas.  *Cf. Perkins,* 342 U.S. at 448, 72 S.Ct. at 419.  Even if Blakey's contacts with Texas via his short-lived malpractice insurance arrangement through a Texas law firm and his multi-year *pro bono* association with the historical society were arguably continuous, we hold that they were not substantial enough to warrant the

---

[7]Because we hold that Blakey and Belin do not have sufficient related or unrelated minimum contacts with Texas, we need not address whether the exercise of personal jurisdiction in this case would be consonant with "traditional notions of fair play and substantial justice."  *See Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033 (requiring both minimum contacts and fairness in order to assert personal jurisdiction); *Bullion,* 895 F.2d at 216 (same).

imposition of general personal jurisdiction over Blakey. *See Keeton,* 465 U.S. at 779 & n. 11, 104 S.Ct. at 1481 & n. 11. With respect to Belin, his contacts are sporadic and attenuated instead of continuous, and they are definitely not substantial. Consequently, we hold that the assertion of general personal jurisdiction over Blakey and Belin would deprive them of their respective due process liberty interests not to be subjected to suit in a distant forum with which they have little connection.[8]

---

[8]Wilson makes several other arguments, all of which fail. First, Wilson argues that removal was improper because notice of removal was untimely. It is, of course, true that 28 U.S.C. § 1446(b) requires a defendant to file notice of removal within thirty days of receipt of the "initial pleading setting forth the claim for relief." Although plaintiff filed a bill of discovery more than thirty days prior to the defendants' removal, the first document stating a claim—the complaint—was filed less than thirty days prior to the defendants' filing of their joint notice of removal.

Second, Wilson argues that the complaint, which had no *ad damnum* clause, did not state claims that facially involved more than $50,000. Thus, removal was timely. Because the record contains a letter, which plaintiff's counsel sent to defendants stating that the amount in controversy exceeded $50,000, it is "apparent" that removal was proper. *See Marcel v. Pool Co.,* 5 F.3d 81, 84 (5th Cir.1993) (allowing removal when it was facially apparent that the claims exceeded $50,000).

Third, Wilson also argues that the district court erred in failing to rule on his motion to remand prior to ruling on the personal jurisdiction issue. Our precedent provides, however, that district courts have the power to rule on personal jurisdiction before reaching motions to remand. *See Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1494 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994).

Finally, Wilson argues that the district court erred in not ruling on its motion to compel more discovery. We are satisfied that the district court, after granting several extensions to the plaintiff to file his motion in opposition to summary judgment and after reviewing the affidavits,

14

V

For the foregoing reasons, the order of the district court is

AFFIRMED.

---

answers, and interrogatories before it dismissed this case, did not abuse its broad discretion in this discovery matter. *See Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir.1982).