**Sang Young KIM**

v.

**FRANK MOHN A/S.**

**Civil Action No. G–95–460.**

United States District Court,
S.D. Texas,
Galveston Division.

May 14, 1996.

Thomas M. Stanley, Stanley & Associates, Houston, TX, for plaintiff.

Gavin Hugh McInnis, Jacobson Guglielmi & McInnis, Houston, TX, for defendant.

### ORDER DENYING MOTION TO DISMISS

KENT, District Judge.

The Plaintiff, a seaman on the M/T World Texas, a Liberian-flagged vessel, was injured while attempting to open the vessel's fore-

peak ballast pump control valve, which failed and struck the Plaintiff in his face and head. At the time of the accident, the vessel was in the Houston ship channel. The Plaintiff brought this products liability action against the Defendant, who designed and later modified the pump which caused the Plaintiff's injuries. The Defendant is a corporation organized under the laws of Norway, with its principal place of business in Bergen, Norway. Now before the Court is the Defendant's Motion to Dismiss for lack of personal jurisdiction. For the reasons set forth below, the Motion is hereby **DENIED.**

 In a previous Order, the Court addressed the Defendant's objections to service of process. Accordingly, in this Order, the Court will focus solely on the Constitutional implications of the exercise of personal jurisdiction over the Defendant. Whether the exercise of personal jurisdiction over the Defendant is consistent with the Due Process Clause of the United States Constitution involves a two-pronged inquiry. First, the Court must conclude that the Defendant has "minimum contacts" with Texas. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must also conclude that requiring the Defendant to litigate in Texas would not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993). When considering a motion to dismiss for lack of personal jurisdiction, this Court must resolve any factual disputes in the plaintiff's favor and treat any uncontroverted allegations in its Complaint as true. *Wilson,* 20 F.3d at 648. However, to invoke this Court's jurisdiction, the Plaintiff must present facts that establish at least a *prima facie* case that personal jurisdiction over the Defendant is proper. *Id.*

### I. Minimum Contacts

 The minimum contacts aspect of due process is divided into two types of personal jurisdiction—specific and general. *Wilson,* 20 F.3d at 647. If the cause of action arises from the particular activities of the defendant in the forum, specific jurisdiction is generally involved. The minimum contacts analysis in cases of specific jurisdiction is narrow, focusing on the relationship between the defendant, the cause of action, and the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). If the cause of action is not based on the defendant's specific activities in the forum state, general jurisdiction is typically involved. In the case at bar, there is no evidence indicating that the Plaintiff's claim arises from the Defendant's contacts with Texas; therefore, this Court may exercise personal jurisdiction over the Defendant only if it can be said that general jurisdiction exists over the Defendant.

In order to exercise general personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must be both "continuous and systematic," and "substantial." *Wilson,* 20 F.3d at 647, 650–51; *Helicopteros,* 466 U.S. at 417–19, 104 S.Ct. at 1873–75. Viewing the evidence in the light most favorable to the Plaintiff, the Court is satisfied that the Defendant has substantial continuous and systematic contacts with the state of Texas.

While the Defendant contends it does not conduct any business in Texas, it concedes that it maintains contacts with Texas through its wholly owned subsidiary Frank Mohn Houston, Inc. (FMH), a Texas corporation located in Houston. Affidavit of Trond Mohn at 1. The broad parameters of the relationship between the Defendant and FMH is set out in an Agency Agreement dated February 10, 1990, through which the Defendant designates FMH as its sales representative throughout much of the United States, and which requires FMH to do its "outmost"[1] to promote the sale of the Defendant's products.

---

**1.** The Agency Agreement was drafted by an employee of the Defendant. English is not the first language of that employee.

FMH services and repairs cargo systems and other equipment that are designed, manufactured, and sold by the Defendant and installed on vessels by another related company. Any replacement parts needed to service the equipment are purchased by FMH from yet another related company. *See* Deposition of German Nilsen at 13–15. FMH is paid a commission on the replacement parts it purchases. In addition, if the Defendant is supplying a cargo system to a vessel being built in the United States, FMH makes visits to the vessel to check on the condition of the cargo system, services for which the Defendant pays FMH a percentage of the contract price. Nilsen Deposition at 22–23. FMH performs most of its responsibilities while the vessels are in the ports of Houston and Freeport, Texas, but has also made inspections or performed repairs for the Defendant in Rhode Island, Maryland, and Georgia. *Id.* at 29–32. FMH is the only company in the United States performing these services on behalf of the Defendant in connection with vessels equipped with the Defendant's cargo systems. *Id.* at 34, 37. All of FMH's income is derived from the servicing of the Defendant's cargo handling systems. *Id.* at 49–50.

While the Defendant contends it has "no agent, employee, or representative in Texas," Affidavit of Trond Mohn at 1, the Court concludes otherwise. The evidence outlined above is more than sufficient to carry the Plaintiff's burden of making a *prima facie* showing that FMH in fact is the Defendant's agent and that the Defendant is subject to personal jurisdiction in Texas.[2] FMH is dedicated solely to servicing equipment designed and sold by the Defendant, and is the only company in the United States that provides this service for the Defendant. Given the importance· of providing service and repairs for the Defendant's cargo systems, the operations of FMH are sufficiently necessary to the Defendant's operation for the Court to conclude that, through its agent FMH, the Defendant has substantial systematic and continuous contacts with the state of Texas that support the exercise of general jurisdiction over the Defendant. *See Donatelli v. National Hockey League,* 893 F.2d 459, 465–66 (1st Cir.1990) (if parent corporation has utilized the subsidiary in such a way that an agency relationship between the companies is established, personal jurisdiction over the parent can be based on the contacts of the subsidiary); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492 (5th Cir.1974) ("an agency relationship may justify a finding that a parent corporation 'does business' in a jurisdiction through its subsidiary's local activities"); *Nolan v. Boeing Co.,* 736 F.Supp. 120, 125 (E.D.La.1990) (if parent corporation uses subsidiary in such a way that agency relationship exists between the corporations, subsidiary's contacts with the forum state may be attributed to the parent for purposes of personal jurisdiction); *accord Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 420 (9th Cir.1977); *Milligan v. Anderson,* 522 F.2d 1202, 1205–07 (10th Cir. 1975).

■ This situation is perhaps subtly but fundamentally . different from a situation where the Plaintiff attempts to impute the contacts of a wholly owned subsidiary to the parent corporation. If the in-state subsidiary can be said to be the "alter ego" of the parent company, a determination that hinges upon, among other factors, the degree of control the parent exercises over the subsidiary, the contacts of the subsidiary may be imputed to the parent for jurisdictional purposes. *See, e.g., Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1161–63 (5th Cir.1983); *Villar v. Crowley Maritime Corp.,* 780 F.Supp. 1467, 1475–76 (S.D.Tex.1992), *aff'd,* 990 F.2d 1489 (5th Cir.1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994). Here, the evidence establishes that FMH is the Defendant's agent; thus, the actions and contacts of FMH are the actions and contacts of the Defendant. This determination is based on the nature of the rela-

---

**2.** The copy of the Agency Agreement before the Court is signed by the Defendant, but not by a representative of FMH. However, the deposition testimony of German Nilsen establishes that the companies have been operating pursuant to the agreement since 1990. *See* Nilsen deposition at 105–06. Therefore, the lack of a signature on behalf of FMH does not diminish the significance of the agreement, particularly given that the Plaintiff is only required to make a *prima facie* showing of jurisdiction over the Defendant.

tionship between the Defendant and FMH, and is wholly independent of the degree of control the Defendant exercises over the internal operations of FMH. Thus, jurisdiction over the Defendant is based on its direct contacts with the forum state, not on its ownership of stock in or control over FMH.

■ For the purposes of this jurisdictional inquiry, FMH essentially is an employee of the Defendant through which the Defendant has established a substantial and continuous presence in the state. Just as an individual or a corporation in which the Defendant owned no stock could be deemed to be an agent of the Defendant through which the Defendant is present in the state, FMH, because of the nature of its relationship with the Defendant, is the Defendant's agent. That the Defendant happens to own stock in FMH is simply irrelevant to this particular jurisdictional inquiry. *See Wells Fargo,* 556 F.2d at 423.

## II. Fair Play and Substantial Justice

■ In addition to requiring minimum contacts with the forum state, due process requires that the exercise of personal jurisdiction over a non-resident defendant comply with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *Wilson,* 20 F.3d at 647. The relationship between the defendant and the forum state must be such that it is reasonable to require the corporation to defend the particular suit. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

■ The fairness prong of the jurisdictional inquiry requires the Court to consider the burden on the defendant, the forum state's interest in resolving the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared inter-

est of the several States in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564. "It is incumbent upon the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1068 (5th Cir.1992).

■ Given the Defendant's substantial and continuous presence in Texas, the Court concludes that, under the circumstances of this case, exercising jurisdiction over the Defendant is consistent with traditional notions of fair play and substantial justice. First, being forced to defend against the Plaintiff's claims in Texas will not be unduly burdensome to the Defendant. Since 1990, the Defendant's representatives have made regular trips to Houston, visiting FMH in Houston approximately every other month. While the visits in Houston apparently are more social than business related, the trips have been made in conjunction with business trips to other cities. *See* Nilsen deposition at 87–89. Therefore, given that the Defendant's business regularly brings it to the United States and Texas, conducting . the trial in Galveston should not be overly disruptive to the Defendant's schedule or impose an undue burden on the Defendant.[3] Moreover, despite the fact that neither the Plaintiff nor the Defendant are Texas residents, Texas does have a legitimate interest in this dispute, given that the accident occurred in Houston. Finally, proceeding with the trial in this Court will provide the Plaintiff with an efficient and convenient means of resolving the case. In fact, it seems likely that the only other location where jurisdiction could be obtained over the Defendant is Norway. While a trial in Norway would clearly be more convenient for the Defendant, it would be extremely burdensome for the Plaintiff, and would almost certainly prevent non-party witnesses

---

**3.** Over the past twenty years, the Defendant has entered into various financial transactions in Texas with and on behalf of FMH, including executing an unconditional guaranty of a debt of FMH in which the Defendant agreed to be sued on the guaranty in Texas. While these facts alone would not be a sufficient basis for exercising jurisdiction over the Defendant, they do make somewhat less compelling the Defendant's claim of undue hardship if required to defend in Texas.

from testifying live at trial. Given the Defendant's presence in Texas and its regular trips to the United States, conducting the trial in Texas should provide the most convenient and efficient overall resolution to all those involved in the case.

Therefore, after considering all the relevant circumstances, the Court concludes that the exercise of personal jurisdiction over the Defendant does not offend traditional notions of fair play and substantial justice. Accordingly, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED**.

**IT IS SO ORDERED.**