# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No.  96-20361

---

MARATHON OIL COMPANY, MARATHON
INTERNATIONAL OIL COMPANY, and
MARATHON PETROLEUM NORGE A/S,

　　　　　　　　　　　　　　　Plaintiffs-Appellants/Cross-Appellees,

versus

A.G. RUHRGAS,

　　　　　　　　　　　　　　　Defendant-Appellee/Cross-Appellant.

---

Appeals from the United States District Court
for the Southern District of Texas

---

July 21, 1999

ON REMAND FROM THE

SUPREME COURT OF THE UNITED STATES

Before POLITZ, WIENER, and STEWART, Circuit Judges.

POLITZ, Circuit Judge:

　　This lengthy procedural dispute is before us on remand from the United

States Supreme Court.  For the reasons assigned, we affirm the district court's

dismissal for lack of personal jurisdiction.[1]

## BACKGROUND

The facts surrounding this case have been discussed in detail in three prior appellate opinions, necessitating that we here provide only a brief review of the factual background of this dispute. In 1976, Marathon Oil Company and Marathon International Oil Company acquired Marathon Petroleum Norge ("Norge") and Marathon Petroleum Company (Norway) ("MPN"). Norge assigned to MPN a license it held to produce gas in Heimdal Field in the North Sea. MPN entered into an agreement with Ruhrgas AG, a German gas supplier, and other European buyers to sell 70% of its share of the Heimdal gas production at a "premium" price. This agreement, the Heimdal Gas Sales Agreement, was to be construed under Norwegian law and any dispute arising thereunder was subject to arbitration in Sweden.

Marathon (which includes Marathon Oil Company, Marathon International Oil Company, and Norge) sued Ruhrgas in Texas state court, alleging that Ruhrgas and the European buyers induced them with false promises of premium prices and guaranteed pipeline transportation tariffs, and that the Ruhrgas monopolization of

---

[1] Marathon's motion to expedite the appeal and to decide the case on existing briefs is GRANTED.

2

the Heimdal gas diminished the value of the license Norge assigned to MPN.[2] Marathon alleged that Ruhrgas effectuated the fraud by conducting three meetings in Houston, Texas and by sending a great deal of correspondence to Marathon in Texas.

Ruhrgas removed the case to federal court, asserting diversity of citizenship jurisdiction, federal question jurisdiction, and jurisdiction under 9 U.S.C. § 205, relating to international arbitration agreements. The district court denied its motion for a stay pending arbitration. Ruhrgas then moved to dismiss for lack of personal jurisdiction and for forum non conveniens, while Marathon moved to remand for lack of subject matter jurisdiction. The district court found that it had the authority to decide personal jurisdiction before determining whether subject matter jurisdiction existed and granted the Ruhrgas motion to dismiss for lack of personal jurisdiction, denying all other motions as moot.

The district court's dismissal for lack of personal jurisdiction was based on its conclusion that there were not sufficient contacts linking the alleged fraudulent actions of Ruhrgas with the State of Texas. Specifically, the district court found that the three meetings in Houston were not adequate to base personal jurisdiction

---

[2] Marathon brought claims for fraud, tortious interference with prospective business relations, participation in breach of fiduciary duty, and civil conspiracy.

because there was no evidence that false statements were made at those meetings, and because Ruhrgas attended them for discussions concerning the Heimdal Agreement. Because the agreement specifically provided for arbitration in Sweden, the district court determined that Ruhrgas could not reasonably have expected to be haled into Texas courts. Additionally, the trial court concluded that Ruhrgas was not subject to general jurisdiction in Texas because of a lack of systematic and continuous contacts with the state.[3]

On appeal, this panel held that the district court first should have examined the subject matter jurisdiction question and ordered the case remanded to state court because there was no basis for federal jurisdiction.[4] The United States Supreme Court denied certiorari on the question of whether subject matter jurisdiction existed.[5] The *en banc* court then vacated the panel opinion but ultimately reinstated the panel's ruling that in removed cases district courts first must decide questions of subject matter jurisdiction before addressing questions of

---

[3] **Marathon Oil Co. v. Ruhrgas, A.G.**, No. H-95-4176 (S.D. Tex. Mar. 29, 1996).

[4] **Marathon Oil Co. v. Ruhrgas, A.G.**, 115 F.3d 315 (5th Cir. 1997).

[5] **Ruhrgas, A.G. v. Marathon Oil Co.**, 118 S. Ct. 413 (1997).

personal jurisdiction.[6]

The Supreme Court granted certiorari and reversed, stating that although questions of subject matter jurisdiction ordinarily should be resolved first, there are appropriate instances, such as the present case, in which straightforward personal jurisdictional issues initially may be resolved.[7] Upon remand from the Supreme Court, the *en banc* court returned this case to the panel for further consideration on the merits of the appeal in light of the Supreme Court's ruling.[8]

## ANALYSIS

When the facts are undisputed, we review *de novo* the district court's determination that personal jurisdiction is lacking.[9]

We must determine the existence of personal jurisdiction over a nonresident defendant by reference to the state's long-arm statute and the due process clause of the fourteenth amendment. Because Texas' long-arm statute extends to the

---

[6] **Marathon Oil Co. v. A.G. Ruhrgas**, 145 F.3d 211 (5th Cir. 1998) (en banc).

[7] **Ruhrgas AG v. Marathon Oil Co.**, 119 S. Ct. 1563 (1999).

[8] **Marathon Oil Co. v. A.G. Ruhrgas**, No. 96-20361, 1999 WL 427615 (5th Cir. June 25, 1999) (en banc).

[9] **Wilson v. Belin**, 20 F.3d 644 (5th Cir. 1994).

fullest constitutional limits, this process is conflated into one decision.[10]

Exercise of personal jurisdiction over nonresident defendants satisfies due process when two requirements are met. First, the nonresident defendant "must have purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with that forum state."[11] The defendant's connection with the forum state should be such that he reasonably should anticipate being haled into court there.[12] Second, the exercise of personal jurisdiction over the nonresident defendant cannot offend "'traditional notions of fair play and substantial justice.'"[13]

---

[10] **Id.** at 647; **Kawasaki Steel Corp. v. Middleton**, 699 S.W.2d 199 (Tex. 1985).

[11] **Wilson,** 20 F.3d at 647 (quoting **International Shoe Co. v. Washington**, 326 U.S. 310 (1945)).

[12] **World-Wide Volkswagen Corp. v. Woodson**, 444 U.S. 286 (1980).

[13] **Asahi Metal Indus. Co. v. Superior Court**, 480 U.S. 102, 105 (1987) (quoting **International Shoe**, 326 U.S. at 316). The factors considered in the "fairness" inquiry include:

> (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

**Bullion v. Gillespie**, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (quotations omitted).

The "minimum contacts" prong can be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction.[14] Exercise of specific jurisdiction is only appropriate when the nonresident's contacts with the forum state arise from or are directly related to the cause of action.[15] General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial.[16]

In the case at bar, we agree with the district court's conclusion that there was neither specific nor general personal jurisdiction over Ruhrgas in the Texas courts. Its mere presence at the three meetings in Houston, together with the noted correspondence and phone calls, is not sufficient to establish the requisite minimum contacts because the record is devoid of evidence that Ruhrgas made false statements at the meetings or that the alleged tortious conduct was aimed at activities in Texas. Further, Ruhrgas could not reasonably have expected to be brought into Texas courts because of its presence at the meetings inasmuch as the

---

[14] **Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.**, 85 F.3d 201 (5th Cir. 1996).

[15] **Helicopteros Nacionales de Colombia, S.A. v. Hall**, 466 U.S. 408 (1984).

[16] **Id.** at 415; **Wilson**, 20 F.3d at 649.

meetings and related communications dealt with the Heimdal Agreement, a contract governed by Norwegian law and providing specifically for Swedish arbitration.

Further, the involvement of Ruhrgas in the Tenneco Energy Resources Corporation is not the kind of activity that constitutes "continuous" and "systematic" contacts for general personal jurisdiction. The same is true for Ruhrgas' other contacts unrelated to this cause of action. In sum, the record reflects no basis for personal jurisdiction over Ruhrgas in Texas. Because we affirm dismissal of this case on personal jurisdiction grounds, we reach neither the subject matter jurisdiction issue discussed in the original panel opinion nor the issue presented in the cross-appeal of Ruhrgas, i.e., whether the district court erred in refusing to stay the action pending arbitration.

The judgment appealed is therefore AFFIRMED.