**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-30744
Summary Calendar
_____


LAURA MAY KIMBALL DOAN,

Plaintiff-Appellant,

VERSUS

CONSUMER TESTING LABORATORIES (FAR EAST) LIMITED;
CONSUMER TESTING LABORATORIES INCORPORATED; and
PACIFIC RESOURCES EXPORT (USA) LTD.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Western District of Louisiana
(94-CV-1602)
_____


Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Laura May Kimball Doan appeals the dismissal of her claims

against Consumer Testing Laboratories, Inc., Consumer Testing

Laboratories (Far East) Ltd. (collectively, the "CTL Companies"),

and Pacific Resources Export (USA) Ltd. ("PREL-USA"), for lack of

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

in personam jurisdiction, pursuant to FED. R. CIV. P. 12(b)(6). Finding no error, we affirm.

## I.

After being injured while seated in a rocking chair that allegedly fell over during normal usage, Doan filed suit against the Jennings, Louisiana, Wal-Mart store from which she purchased the rocker, Wal-Mart Stores, Inc., Victory Land Entertainment Co., Ltd., the manufacturer of the rocker, and their respective insurers. Doan amended her complaint to add the CTL Companies, which provide pre-market quality testing services to Wal-Mart Stores, Inc., and PREL-USA, which provides housing and other accommodations to the representatives of its foreign parent PREL, Wal-Mart's overseas purchasing agent, when said representatives present product samples to Wal-Mart buyers in the United States.

Doan later settled her claims with the Wal-Mart and Victory Land defendants but maintained her actions against the CTL Companies and PREL-USA. Upon motion by the remaining defendants, the district court granted each defendant's motion to dismiss for lack of personal jurisdiction.

## II.

### A.

The Due Process Clause of the Fourteenth Amendment[1] limits the power of a state to exercise personal jurisdiction over a nonresident defendant, except where that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The "minimum contacts" must evince the nonresident defendant's intent to avail itself purposefully of the privilege of conducting activities within the forum state, thus invoking the benefits of and protections of the forum's laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Where the cause of action alleged relates to the nonresident defendant's contact with the forum state, "specific jurisdiction" is appropriate where the defendant's minimum contacts result from its purposeful contacts with the state, rather than from the unilateral activities of the claimant or a third party. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). Where the claimant alleges harms caused by a product within the forum state, the court has specific jurisdiction over the nonresident defendant to the extent that the defendant

---

[1] Because we have concluded previously that the Louisiana Long-Arm Statute, LA. REV. STAT. ANN. § 13:3201 (West. 1968 & Supp. 1984), extends to the full limits of the Due Process Clause, we apply circuit precedent construing the limits of such due process. *See Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081, 1083 (5th Cir. 1984).

delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state. *See id.* Where, however, the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within or directed at the forum state, a court may exercise "general jurisdiction" over a defendant that has continuous and systematic contacts with the forum state. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 418-19 (1984).

Once a court determines that a nonresident defendant has sufficient related or unrelated minimum contacts with the forum state, it must then consider whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. The factors to be considered are (1) the burdens upon the nonresident defendant; (2) the interests of the forum state in the litigation; (3) the plaintiff's interest in securing relief; (4) the interstate judicial systems' interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental substantive social policies. *See World-Wide Volkswagen*, 444 U.S. at 292.

### B.

Absent any dispute regarding the relevant facts, we review

*de novo* the district court's decision not to exercise personal jurisdiction over a nonresident defendant. *See Ham v. LaCienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). We construe all jurisdictional factual disputes in favor of the party seeking to invoke jurisdiction. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

Doan argues first that Louisiana courts may exercise specific jurisdiction over the CTL Companies[2] because they "knew that in acting as the tester and quality control department of a national retailer like Wal-Mart, they could reasonably expect to be subject to the jurisdiction of the courts where these products were sold, used, and caused injury." It is undisputed that the CTL Companies do not own or manufacture either the allegedly defective rocker or any of its constituent parts; their sole function is to conduct pre-market testing and inspection of products that later may be purchased by Wal-Mart buyers and sold at Wal-Mart retail stores.[3] The CTL Companies do not know

---

[2] We address together Doan's claims against CTL and CTL (Far East) because Doan alleges that each is in fact the same entity physically located in different places. That is, because CTL (Far East) is owned solely by Stewart Satter (the 100% owner of CTL) and CTL, because the only officers and directors of CTL (Far East) are Stewart, his wife, and his son, and because each acts as Wal-Mart's quality control department, Doan contends that they are the same. Because our analysis does not turn upon this issue, we assume *arguendo* that Doan's contention is correct. *See, e.g., Rashidi v. American President Lines*, 96 F.3d 124 (5th Cir. 1996) (noting that we may assume *arguendo* the validity of any facts or legal arguments in controversy to the extent that each does not affect the ultimate disposition of the case).

[3] In addition to actually testing and inspecting the products, the pre-market testing and inspection activities include educating Wal-Mart buyers about
(continued...)

whether a product that they test will ever be placed into the stream of commerce§§their influence on a particular product is limited to rendering test results. Wal-Mart itself has sole discretion to make and sole participation in the final purchasing decision.

Doan emphasizes, however, that the CTL Companies are aware that Wal-Mart has stores in Louisiana and thus that they could have foreseen that the products that they test for Wal-Mart could find their way to Louisiana via Wal-Mart's stream of commerce. We have held previously that foreseeability that products might end up in the stream of commerce is not a sufficient basis, standing alone, for a court to invoke specific personal jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 115 S. Ct. 322 (1994). "'[T]he foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should *reasonably anticipate being haled into court there*.'" *Id.* at 648-49 (quoting *World-Wide Volkswagen*, 444 U.S. at 295) (emphasis added). Such a foreseeability requirement is satisfied where the defendant purposefully directs his activities at the forum state by, among other things, actually injecting a product into the stream of commerce. *See Wilson*, 20 F.3d at 649 (citing

_____

(...continued)
the product, testing competitive products from other manufacturers, and after-production testing to ensure that Wal-Mart receives the product that had been tested previously.

**6**

*Burger King*, 471 U.S. at 476).[4]

Hence, specific personal jurisdiction will attach only if the CTL Companies have in fact injected a product into the stream of commerce. We do not so find. The decision whether to place any of the products tested by the CTL Companies into the stream of commerce is entrusted to the sole discretion of Wal-Mart, and, unlike other nonresident defendants against whom we have invoked specific personal jurisdiction, the CTL Companies are not a conduit in the seamless web of interactions that injects a product into the stream of commerce.[5] Although the testing

---

[4] The Supreme Court's and this court's jurisprudence on the stream of commerce requirements for specific personal jurisdiction are not models of clarity. In *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987), four Justices endorsed the "stream of commerce plus" theory, by which jurisdiction attaches only if the nonresident defendant injected products into the stream of commerce plus engaged in some additional conduct directed toward the forum state (i.e. advertising in the forum). *See id.* at 112 (O'Connor, J., writing for the Court). Four other Justices endorsed the "stream of commerce only" theory, by which the nonresident defendant's placing a product into the stream of commerce with knowledge that the product may reach the forum state is sufficient to subject it to specific personal jurisdiction. *See id.* at 117 (Brennan, J., concurring).

In light of the Court's split in *Asahi*, we have noticed our intention to follow the "stream of commerce only" theory and to reject the "stream of commerce plus" theory. *See Ruston Gas*, 9 F.3d at 420 (citing *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 386 (5th Cir.) ("Because the Court's splintered view of minimum contacts in *Asahi* provides no clear guidance on this issue, we continue to gauge Jugometal's contacts with Texas by the stream of commerce standard as described in *World-Wide Volkswagen* and embraced in this circuit."), *cert. denied*, 493 U.S. 823 (1989)).

[5] *See, e.g., Ruston Gas*, 9 F.3d at 420 (finding specific personal jurisdiction in Texas against a Minnesota shipper that delivered products to a shipper destined for Texas); *Irving*, 864 F.2d at 387 (finding specific personal jurisdiction in Texas against a Yugoslavian licensed trading company that sold raw asbestos to an American broker who then sold the asbestos to a Texas asphalt company); *Bean Dredging*, 744 F.2d at 1085 (finding specific personal jurisdiction in Louisiana against a

(continued...)

results issued by the CTL Companies with respect to a particular product may in fact influence Wal-Mart's decision to place a product into the stream of commerce, the CTL Companies themselves do not purposefully direct their activities toward Louisiana sufficiently to confer specific personal jurisdiction upon Louisiana courts; the unilateral activity of Wal-Mart in deciding to place a product into the stream of commerce is simply insufficient.

## C.

Doan next argues that Louisiana may exercise general personal jurisdiction over the CTL Companies because they have continuous and systematic contacts with Louisiana. According to Doan, that the CTL Companies conduct similar pre-market quality testing for other national retailers that have stores in Louisiana, including Venture Stores, Home Depot, and Ace Hardware, among others, "demonstrates an ongoing, continuous series of contacts with Louisiana, giving rise to 'general' jurisdiction over them."

It is undisputed, however, that the CTL Companies (1) have no offices or other facilities in Louisiana, nor do they own any property in the state; (2) have no employees living or working

(...continued)
Washington manufacturer of steel castings that sold the castings to a California cylinder maker, which cylinders were used ultimately as parts of a dredge constructed by a Louisiana shipper).

8

within the state; (3) maintain no bank accounts, telephone listings, or other books or records in the state; (4) pay no taxes in or to the state; (5) neither solicit nor advertise for business in the state; and (6) do not manufacture, broker, or distribute any products that are placed into the stream of commerce and may ultimately end up in Louisiana, nor do they personally manufacture, broker, or distribute any products there. Because the CTL Companies have no substantial, systematic, or continuous contacts with Louisiana, Louisiana courts may not exercise general personal jurisdiction over them. *See Wilson*, 20 F.3d at 649–50.[6]

D.

Doan contends finally that Louisiana courts have specific personal jurisdiction[7] over PREL-USA, the liaison between its parent company PREL, the exclusive overseas buyer for Wal-Mart, and Wal-Mart. PREL-USA provides various services to the PREL foreign subsidiaries when representatives of these subsidiaries visit Wal-Mart buyers in Arkansas, including arranging housing and transportation, scheduling appointments, receiving product samples, and providing a place for the PREL representatives to

---

[6] Because we find that the CTL Companies do not have minimum contacts with Louisiana, we need not decide whether conferring jurisdiction on Louisiana courts would offend traditional notions of fair play and substantial justice.

[7] Doan does not raise on appeal the question whether Louisiana courts may assert general personal jurisdiction over PREL-USA.

show product samples to the Wal-Mart buyers.  According to Doan, specific jurisdiction is appropriate because "PREL-USA facilitates the review, testing, purchase, and sale of products . . . and the delivery of that product into the stream of commerce that ultimately reached Laura Doan and caused her injury."

Doan's reliance on *Irving* and *Bean Dredging* is unavailing; each is factually distinct.  As discussed above, *Irving* involved the application of personal jurisdiction in Texas against a Yugoslavian licensed trading company that sold raw asbestos to an American broker who then sold the asbestos to a Texas asphalt company, *see* 864 F.2d at 387, whereas *Bean Dredging* conferred personal jurisdiction on the Louisiana courts against a Washington manufacturer of steel castings that sold the castings to a California cylinder maker, which cylinders were used ultimately as parts of a dredge constructed by a Louisiana shipper, *see* 744 F.2d at 1085.

Each of these cases involved nonresident defendants that were links in the continuous chain of brokers, manufacturers, and distributors that permitted the introduction of a product into the stream of commerce.  That is, because a particular product or component of the product passed through the hands of the nonresident defendant during its journey into the stream of commerce, the defendant's "touching" of the product or component was sufficient to satisfy the requirement that it personally inject a

product into the stream of commerce.

In contrast, PREL-USA is not a link in the chain of events that injects a particular product into the stream of commerce. Granted, PREL-USA facilitates Wal-Mart's process of determining which products to place into the stream of commerceSSby accommodating the housing and other logistical needs of its foreign representatives so that they may perform more easily their task of presenting product samples to the Wal-Mart buyersSSbut the services it provides are not the conduit (or a link therein) by which products enter into the stream of commerce, nor are they sufficiently connected with a particular product so as actually to "touch" the product.  PREL-USA simply helps its foreign representatives present product samples to Wal-Mart buyers, which buyers then choose unilaterally to purchase the product and then place it into the stream of commerce, or not to purchase the product.  Mere foreseeability that a product might end up in the stream of commerce because of the unilateral act of another is an insufficient ground for specific personal jurisdiction.  *See Wilson*, 20 F.3d at 649 (citing *Burger King*, 471 U.S. at 476).

AFFIRMED.