IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20879
_____


ALPINE VIEW COMPANY LIMITED; BJORN HANSEN

Plaintiffs - Appellants

v.

ATLAS COPCO AB; ATLAS COPCO ROBBINS; ATLAS COPCO COMPRESSORS
INCORPORATED; ATLAS COPCO COMPTEC INCORPORATED

Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
February 25, 2000

Before KING, Chief Judge, and REYNALDO G. GARZA and EMILIO M.
GARZA, Circuit Judges.


KING, Chief Judge:

Plaintiffs-Appellants challenge the district court's grant

of Defendants-Appellees' motions to dismiss for lack of personal

jurisdiction and for forum non conveniens.  They also challenge a

magistrate judge's order denying them discovery on matters they

argue are relevant to the personal jurisdiction issue.  We

conclude that the district court did not err in dismissing the

case against all of the defendants and therefore affirm.


1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an alleged breach of a 1992 Intentional Agreement ("1992 Agreement") between Alpine View Company, Limited ("Alpine View"), and Uniroc AB ("Uniroc"), a wholly-owned subsidiary of the Swedish holding company, Atlas Copco AB ("ACAB"). In 1989, Bjørn Hansen, the president of Alpine View, was granted exclusive worldwide rights to the distribution and sale of offshore drill bits manufactured by Shanghai Machinery & Equipment Import/Export Corporation ("SMEC"), a Chinese company. To facilitate the sale of these products, Hansen sought an established distributor, and eventually executed the 1992 Agreement with Uniroc. Under the 1992 Agreement, Uniroc was to purchase drill bits from Bjørn Hansen A/S, and eventually become the exclusive distributor of those products in certain specified sectors of the world market. Uniroc was to pay Alpine View a commission based on net sales to users and distributors outside the Atlas Copco Group, which comprises ACAB and its seventy-one subsidiaries. To enhance its ability to deal directly with SMEC, Uniroc was also to enter into a separate distributorship agreement with that company. The existence of the separate distributorship agreement was a pre-condition for the effectiveness of the 1992 Agreement.

The 1992 Agreement specified that all impasses were to be submitted to arbitration in Oslo, Norway. A dispute arose that was not resolved through negotiation, and in 1993, Alpine View filed a writ of summons for an arbitration case in Oslo against

ACAB and Uniroc.  As grounds for the suit, Alpine View alleged that "the defendants are guilty of wilfully and negligently committing a breach of contract and unlawfully interfering in the plaintiff's business affairs and other contractual rights in China."  The arbitration panel issued its decision on July 2, 1996, dismissing the claim against ACAB as it was not a party to the 1992 Agreement's arbitration clause and finding in favor of Uniroc because Alpine View had decided to withdraw its claim.

On August 5, 1995, prior to the arbitration proceeding's conclusion, Alpine View and Hansen ("Appellants") filed suit in the 281st Judicial District Court of Harris County, Texas against four defendants; ACAB, Atlas Copco Compressors, Inc. ("Compressors"), Atlas Copco Comptec, Inc. ("Comptec"), and Atlas Copco Robbins ("Robbins").  Compressors, Comptec, and Robbins are each wholly-owned subsidiaries of Atlas Copco North America, Inc. ("ACNA"), which is, in turn, now only partially owned by ACAB. Neither Uniroc nor ACNA was named as a party to the action.  The suit alleges breach of contract, common law fraud, fraudulent inducement, breach of the duty of good faith and fair dealing, tortious interference with a contract, and negligent misrepresentation.  Appellants claim that all of the named defendants jointly violated the 1992 Agreement by forming their own joint venture with SMEC, thereby undermining Appellants' rights.  None of the named defendants signed the 1992 Agreement.

On September 13, 1995, Comptec, Compressors, and Robbins removed the case to the U.S. District Court for the Southern

3

District of Texas.  Alpine View is incorporated under the laws of the British Virgin Islands and Hansen is a resident of Norway. Compressors and Comptec are each Delaware corporations, with Compressors having its principal place of business in Massachusetts and Comptec having its in New York.  Robbins is a Washington corporation and has its principal place of business in that state.  The basis for removal was diversity jurisdiction under 28 U.S.C. § 1332, with the removing defendants arguing that ACAB, formed under the laws of Sweden, was not a proper party to the case and had been joined simply to defeat subject-matter jurisdiction.

A flurry of motions followed removal.  Appellants filed a motion to remand the case.  Robbins filed a motion for dismissal based on a lack of personal jurisdiction.  ACAB filed motions for dismissal based on a lack of personal jurisdiction, on insufficiency of service of process, and on a lack of subject-matter jurisdiction.  Compressors and Comptec filed motions to dismiss for forum non conveniens.  On January 19, 1996, defendants were ordered to produce documents, in the context of Federal Rule of Civil Procedure 26, regarding the jurisdictional issues raised.  The case was referred to Magistrate Judge Mary Milloy under 28 U.S.C. § 636(b)(1)(A) and (B) on January 25, 1996.

On March 8, 1996, Appellants filed motions to compel ACAB to respond to interrogatories and production requests.  A similar motion was filed on April 11 with regard to Robbins.  The

4

magistrate judge held a motion conference on June 18, and entered an order on that date granting in part, and denying in part, the Appellants' motions to compel.  The Appellants requested that the magistrate judge review her order, and on June 24, she indicated with a notice to the parties that she declined to undertake that review.  Pursuant to Federal Rule of Civil Procedure 72, Appellants filed on July 2 specific objections to the magistrate judge's decisions regarding the motions to compel.

On July 30, the magistrate judge issued a memorandum and recommendation that ACAB's and Robbins' motions to dismiss for lack of personal jurisdiction be granted, and that Appellants' motion for remand be denied as moot.  The next day, she issued a memorandum and recommendation that Comptec's and Compressors' motions to dismiss for forum non conveniens be granted.  Timely objections to these recommendations were filed.  The district court denied Appellants' motion to remand on September 5, 1996.  Both dismissal recommendations were adopted by the district court on September 30.  In addition, the district court ordered that ACAB's motion to dismiss for lack of subject-matter jurisdiction be denied as moot.[1]  Appellants' subsequent motions to amend and for a new trial were denied.  They timely appealed.

On August 20, 1998, a three-member panel following this court's en banc decision in Marathon Oil Co. v. A.G. Ruhrgas, 145 F.3d 211 (5th Cir. 1998), issued an order vacating both the

---

[1]  The district court's order refers to "Robbins' motion" being denied.  However, the docket number cited (26) refers to ACAB's motion.

magistrate judge's recommendations and the district court's orders because the district court had dismissed for lack of personal jurisdiction without first considering motions challenging subject-matter jurisdiction. See Alpine View Co. Ltd. v. Atlas Copco A.B., 180 F.3d 628 (5th Cir. 1998). The Appellants timely appealed this order. The Supreme Court granted certiorari, vacated the judgment, and remanded the case for further consideration in light of its decision in Ruhrgas AG v. Marathon Oil Co., 119 S. Ct. 1563 (1999). See Atlas Copco AB v. Alpine View Co., Ltd., 119 S. Ct. 1790 (1999). We now undertake that review.

## II. THE DISMISSAL OF APPELLANTS' CLAIMS

This case raises a number of issues regarding the district court's dismissal of Appellants' claims against the Appellees. We first determine whether the district court abused its discretion in dismissing those claims without first considering motions challenging its subject-matter jurisdiction. See Ruhrgas AG v. Marathon Oil Co., 119 S. Ct. 1563 (1999). We next address Appellants' contentions that jurisdictional discovery was improperly limited and that the court erred in dismissing claims against ACAB and Robbins for lack of personal jurisdiction. Finally, we consider Appellants' argument that the district court erred in dismissing claims against Compressors and Comptec for forum non conveniens.

*A. Personal Jurisdiction Before Subject-Matter Jurisdiction*

In Ruhrgas AG v. Marathon Oil, 119 S. Ct. 1563 (1999), the Supreme Court rejected a rule, applicable to removed cases, that required a district court to assess whether it had subject-matter jurisdiction before it could determine whether motions to dismiss for lack of personal jurisdiction should be granted. Id. at 1569. We read the Ruhrgas AG Court's opinion to direct lower courts facing multiple grounds for dismissal to consider the complexity of subject-matter jurisdiction issues raised by the case, as well as concerns of federalism, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction. We use the same factors to guide our assessment of whether the district court abused its discretion, see id. at 1572, in its conclusion in this case.

In the case before us, two motions challenged the court's subject-matter jurisdiction. Appellants sought remand on the ground that the alleged basis for removal – diversity of citizenship under § 1332 – does not exist because alien parties are present on both sides of the suit. One of those parties is ACAB, which Appellants contend is a proper party.[2] In a motion filed prior to the resolution of the Norway arbitration proceeding, ACAB challenged subject-matter jurisdiction pursuant to the Convention of the Recognition and Enforcement of Foreign

---

[2] In removing the case to federal court, Compressors, Comptec, and Robbins contended that ACAB was fraudulently joined solely to defeat diversity jurisdiction.

Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38.

The magistrate judge did not state that these motions raised particularly thorny questions, and instead cited judicial economy as the primary reason for considering motions for dismissal due to a lack of personal jurisdiction before addressing the subject-matter jurisdiction motions. Ruhrgas AG suggests this does not, under the circumstances, constitute an abuse of discretion. Under the Texas long-arm statute, see TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (1997), a court has personal jurisdiction over a foreign defendant to the fullest extent allowed by the federal constitution. See Wilson v. Belin, 20 F.3d 644, 647 & n.1 (5th Cir. 1994). As a result, this case does not raise "difficult questions of state law." See Ruhrgas AG, 119 S. Ct. at 1571. A federal court may consider personal jurisdiction issues prior to addressing a motion to remand where "federal intrusion into state courts' authority is minimized." Id. (citing Asociacion Nacional de Pescadores v. Dow Quimica, 988 F.2d 559, 566-57 (5th Cir. 1993)). On this basis, we find no abuse of discretion.

B. *Issues Concerning Claims Against ACAB and Robbins*

Appellants challenge the district court's dismissal of their claims against ACAB and Robbins, arguing that submitted evidence satisfies Appellants' burden of making a prima facie showing of personal jurisdiction. There are several components to Appellants' challenge. First, they argue that they were required

8

do more than make out a prima facie case.  Second, Appellants contend that submitted evidence demonstrates that the court may assert personal jurisdiction over both ACAB and Robbins as the requirements of specific jurisdiction have been met.  Third, they argue that they established that the court may assert general jurisdiction over both ACAB and Robbins.  Appellants also challenge the determination to restrict jurisdictional discovery.  Because our resolution of the discovery issue is best understood in light of our resolution of the dismissal issue, we discuss the dismissal issue first.

### 1.  Dismissal for Lack of Personal Jurisdiction

We review de novo a district court's dismissal for want of personal jurisdiction.  See Gardemal v. Westin Hotel Co., 186 F.3d 588, 592 (5th Cir. 1999).  Under the Federal Rules of Civil Procedure, a federal court in a diversity case may exercise jurisdiction over a nonresident corporate defendant only if permitted by state law.  See FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1).  As noted above, the Texas long-arm statute has been determined to have the same scope as the Constitution.  See Wilson v. Belin, 20 F.3d 644, 647 & n.1 (5th Cir. 1994).  Thus, our usual two-step analysis reduces to one step, and we consider whether exercising jurisdiction over either ACAB or Robbins is consistent with the Due Process Clause of the Fourteenth Amendment.  See Mink v. AAAA Dev. LLC, 190 F.3d 333, 335 (5th Cir. 1999).

9

"The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'"  Id. at 336 (quoting Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999) (in turn quoting International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945))).  "Minimum contacts" can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction.  See Wilson, 20 F.3d at 647.  Specific jurisdiction over a nonresident corporation is appropriate when that corporation has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).  General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are "continuous and systematic." Helicopteros, 466 U.S. at 415-16.

When, as here, the district court conducted no evidentiary hearing, the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case

10

supporting jurisdiction. See Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 326 (5th Cir. 1996). We must accept as true that party's uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation. See Guidry v. United States Tobacco Co., 188 F.3d 619, 625-26 (5th Cir. 1999); Latshaw v. Johnston, 167 F.3d 208, 212 (5th Cir. 1999); Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 418 (5th Cir. 1993) ("When alleged jurisdictional facts are disputed, we must resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction."); Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990). With this standard in mind, we turn to Appellants' contentions regarding specific and general jurisdiction.

   a.   Specific Jurisdiction and the Stream of Commerce Theory

   As the Supreme Court noted in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), "the constitutional touchstone" for asserting personal jurisdiction over a nonresident defendant is "whether the defendant purposefully established 'minimum contacts' in the forum State." Id. at 474. It went on to discuss the role of foreseeability in establishing such contacts, and to state that the "'foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,

11

297 (1980)).  Appellants draw on this language to argue that district court erred in refusing to assert specific jurisdiction over ACAB and Robbins.  They contend that substantial evidence supported the conclusion that ACAB and Robbins directed their products and business activities into Texas, and thus the corporations should have anticipated being haled into Texas courts.

In making this argument, Appellants rely heavily on the stream-of-commerce theory.  See World-Wide Volkswagen, 444 U.S. at 298.  They take issue with the district court's refusal to apply that theory to this case, noting that (1) no Fifth Circuit opinion has explicitly stated that the stream-of-commerce theory could not be applied to "economic" cases; and (2) that the instant suit represents a prime opportunity for its application to such cases.  In support of their argument that the stream-of-commerce theory is applicable to cases other than those involving products liability, Appellants point to courts applying the theory to cases raising antitrust or intellectual property related claims.  See, e.g., Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994); Allen Organ Co. v. Kawai Musical Instruments Mfg. Co., 593 F. Supp. 107 (E.D. Pa. 1984); Pfeiffer v. International Academy of Biomagnetic Med., 521 F. Supp. 1331 (W.D. Mo. 1981).

As we noted in Bearry v. Beech Aircraft Corp., 818 F.2d 370 (5th Cir. 1987), when a nonresident's contact with the forum state "stems from a product, sold or manufactured by the foreign

12

defendant, which has caused harm in the forum state, the court has [specific] jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." Id. at 374 (citing World-Wide Volkswagon, 444 U.S. at 298). Appellants are correct in noting that we have not, in our decisions dealing with the stream-of-commerce theory, entirely foreclosed its application to cases not involving product liability claims. We need not decide here whether the theory is, or is not applicable to a broader range of cases. Appellant's challenge must be rejected because delivery of products into the stream of commerce does not support assertion of specific jurisdiction over ACAB and Robbins.

In concluding their argument that the stream-of-commerce theory is appropriately applied in this case, Appellants contend that

> [w]here parties, like ACAB and Robbins, either sell or attempt to sell a product in the Texas market, then it cannot be said that it is unfair or unjust [to] subject them to jurisdiction with respect to any claims that might be brought against them. Put another way, if a party is selling or trying to sell goods in a particular state, they are obviously seeking to avail themselves of the benefits of the forum and should not be allowed to shield themselves from the ultimate accountability that might follow.

Appellants' Br. at 40. Based on the evidence they contend supports assertion of specific jurisdiction, Appellants clearly intend to focus the court's attention on all products – not just drill bits – ACAB and Robbins allegedly put into the stream of commerce. Moreover, Appellants argue that putting products into

13

the stream of commerce with the expectation that Texans will purchase or use those products suffices to establish jurisdiction with respect to "any claims."

This is more akin to a general jurisdiction argument than to a specific jurisdiction argument.  Appellants make no attempt to link Appellees' contacts with Texas and the instant litigation. This is a link that specific jurisdiction requires.  See Shaffer v. Heitner, 433 U.S. 186, 204 (1977); Guidry v. United States Tobacco Co., 188 F.3d 619, 625 (5th Cir. 1999).  Instead, Appellants assert that ACAB's and Robbins' contacts should be sufficient to subject them to jurisdiction with respect to "any claims."  We have specifically rejected a party's reliance on the stream-of-commerce theory to support asserting general jurisdiction over a nonresident defendant.  See Bearry, 818 F.2d at 375.

Even assuming that ACAB and Robbins delivered their products into the stream of commerce with the expectation that they would be purchased, or used, by Texas consumers, those activities do not support a finding of any connection between Appellees' contacts, the forum state, and Appellants' causes of action.  See Shaffer, 433 U.S. at 204.  Appellants' claims arise out of losses they experienced as a result of ACAB's and Robbins' alleged actions vis-à-vis the 1992 Agreement, not as a result of any contact with a product.  Cf. Ham v. La Cienega Music Co., 4 F.3d 413, 416 (5th Cir. 1993) (finding that defendants' activities, though connecting them to Texas within meaning of stream-of-

14

commerce cases, were insufficient to support jurisdiction given "at best a highly attenuated relationship" between the litigation and those activities); <u>Gulf Consol. Servs. Inc. v. Corinth Pipeworks, S.A.</u>, 898 F.2d 1071, 1073-74 (5th Cir. 1990) (applying stream-of-commerce principles to establish specific jurisdiction over defendant to a breach of warranty action, noting that product caused harm in forum state). Appellants have not asserted that the alleged misdeeds occurred in Texas, or that the 1992 Agreement was negotiated or executed in Texas.[3] Neither Alpine View nor Hansen is considered a Texas resident.

Appellants assert that Texas businesses have been subjected to less competition in the drill bit market and to restricted access to improved technology as a result of ACAB's and Robbins' actions. However, these are neither harms that stem from ACAB's or Robbins' delivery of products into the stream of commerce, harms from which the Appellants' causes of action arise, nor harms to which those causes of action are related. In short, Appellants have failed to make a prima facie showing that the "litigation results from alleged injuries that arise out of or relate to" ACAB's or Robbins' contacts with Texas. <u>Burger King</u>,

---

[3] The only activities even remotely related to circumstances surrounding the 1992 Agreement that Appellants allege occurred in Texas are: (1) a 1983 meeting between Hansen and representatives of Chinese manufacturing facilities at an offshore technology conference held in Houston, Texas; (2) Hansen's employment of counsel in Houston to prepare a renewed distribution agreement between Alpine View and SMEC; (3) significant negotiations between Hansen and SMEC in Houston; and (4) Hansen's meeting with unidentified distributors of ACAB products in Texas to negotiate "potential distribution alternatives" in the United States.

15

471 U.S. at 472 (citation and internal quotation marks omitted). It simply cannot be said that ACAB or Robbins, based on the sale of products in Texas, could have anticipated being haled into court to defend the instant suit.  Compare Calder v. Jones, 465 U.S. 783, 790 (1984) (finding that defendants' allegedly libelous actions were expressly aimed at a California resident, and thus could reasonably anticipate being haled into California courts to answer for the truth of statements made).  As a result, we conclude that the district court did not err in finding that Appellants did not make a prima facie case supporting specific jurisdiction.

b.  General Jurisdiction and the Alter-Ego Doctrine

Appellants also challenge the district court's conclusion that they had not shown that assertion of general jurisdiction was proper in this case.  They contend that both ACAB and Robbins have sufficient direct contacts with Texas to support general jurisdiction.  Appellants also maintain that the district court could assert general jurisdiction over ACAB and Robbins by virtue of their subsidiaries' and other third parties' contacts with Texas because ACAB and Robbins were the alter egos of those entities.

To make a prima facie showing of general jurisdiction, Appellants must produce evidence that affirmatively shows that ACAB's and Robbins' contacts with Texas that are unrelated to the litigation are sufficient to satisfy due process requirements.

16

See Felch, 92 F.3d at 327.  Those unrelated contacts must be substantial, see Wilson, 20 F.3d at 649-50 & n.5, continuous and systematic, see Helicopteros, 466 U.S. at 416; Wilson, 20 F.3d at 649.  As we recently noted, "general jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." Access Telecom, Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 717 (5th Cir. 1999).

Examining the submitted evidence, it is clear that Appellants have not demonstrated that Robbins' direct contacts with Texas during the relevant period were sufficient to establish general jurisdiction.  The evidence shows, at best, that Robbins sold, on isolated occasions, products to entities located in Texas, that it was party to an agreement to provide Mexican mines with products that were shipped to Texas before being shipped to Mexico, that companies used Robbins' products for projects in Texas, and that Robbins' personnel made field service visits to Texas between December 1992 and December 1993. These contacts are neither substantial, continuous, nor systematic.

The same conclusion is compelled with regard to ACAB.  To demonstrate ACAB's "direct" contacts with Texas, Appellants rely on evidence that (1) indicates that the products of ACAB's subsidiaries are sold in Texas; and (2) otherwise indicates the presence and activities in Texas of ACAB's subsidiaries and of

17

subsidiaries of those subsidiaries.[4]  This is not surprising, given ACAB is a holding company.  However, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir. 1983).

Thus, due largely to ACAB's corporate structure, Appellants must make a prima facie showing that ACAB so controls other organizations that the activities of those organizations may be fairly attributed to ACAB for purposes of asserting jurisdiction over it.  See Gardemal v. Westin Hotel Co., 186 F.3d 588, 593 (5th Cir. 1999) (describing that under Texas law, the alter ego doctrine "applies 'when there is such unity between the parent corporation and its subsidiary that the separateness of the two corporations has ceased and holding only the subsidiary corporation liable would result in injustice'" (quoting Harwood Tire-Arlington, Inc. v. Young, 963 S.W.2d 881, 885 (Tex. App.–Fort Worth 1998, writ dism'd by agr.))); Hargrave, 710 F.2d at 1161 (describing burden on party seeking to establish "alter ego jurisdiction").

---

[4]  There are isolated exceptions that do not fall cleanly into one of these categories, but those exceptions also involve ACAB subsidiaries.  For example, ACAB stated that it was one of five signatories to an agreement that required Atlas Copco France Holdings, S.A., a French corporation, to wire payment for stock in another French company to Dallas, Texas.

In Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 208-09 (5th Cir. 1996), we listed twelve factors to be used when assessing whether a subsidiary is the alter ego of its parent. However, we also noted that the assessment is based on a consideration of totality of the circumstances. Id. at 209. Here, although only a prima facie case is required, Appellants' task is made more difficult by the existence of multiple levels of ACAB subsidiaries. For example, in order for the activities of Compressors, Comptec, and Robbins to be attributed to ACAB, Appellants must make a prima facie case that ACAB controls ACNA, itself a holding company, and controls Compressors, Comptec, and Robbins.

Keeping in mind that we must resolve factual disputes in Appellants' favor, our review of the record nonetheless leads us to conclude that Appellants have not met their burden. ACAB owned all the stock of ACNA, which in turn owns all the stock of Comptec, Compressors, and Robbins. A number of individuals appear to have been directors or officers for multiple companies. By virtue of its stock ownership, ACAB received dividends from corporations that do business in Texas. Evidence also indicates that interest-bearing loans were made between corporations.

We have said, however, that "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." Hargrave, 710 F.2d at 1160; see also Gardemal, 186 F.3d at 593 (noting that ties "through stock ownership, shared officers,

19

financing arrangements, and the like" do not, by themselves, establish an alter-ego relationship). Instead, "[t]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." Hargrave, 710 F.2d at 1160 (citing Reul v. Sahara Hotel, 372 F. Supp. 995, 998 (S.D. Tex. 1974)).

Such control has not been indicated here. The existence of intercorporate loans does not establish the requisite dominance, see United States v. Fidelity Capital Corp., 920 F.2d 827, 838 (11th Cir. 1991), and in fact, interest-bearing loans suggest separation of corporate entities. See, e.g., Doe v. Unocal Corp., 27 F.Supp.2d 1174, 1188 (C.D. Cal. 1998). Appellants' evidence does not suggest that ACAB otherwise financed its subsidiaries' operations; that ACAB caused the incorporation of its subsidiaries; that its subsidiaries are grossly undercapitalized; that ACAB paid the salaries and other expenses of the subsidiaries; that subsidiaries received all their business from ACAB; that ACAB used subsidiaries' property as its own; that daily operations of the corporations were not separate; or that subsidiaries do not observe corporate formalities.[5] As a result, they have not met their burden. Even if we were to assume that all of ACAB's subsidiaries had substantial,

---

[5] Appellants include Robbins in their arguments urging us to find that they have met their burden with regard to general jurisdiction through the contacts of subsidiaries and distributors. However, they do not point to any evidence that supports the conclusion that Robbins controlled its subsidiaries or distributors to such a degree that the activities of those entities may be fairly attributed to Robbins.

continuous, and systematic contacts with Texas, those contacts could not, based on Appellants' evidence, be attributed to ACAB. We conclude that the district court did not err in dismissing Appellants' claims against Robbins and ACAB for lack of personal jurisdiction.[6]

## 2. Limitations on Discovery

Appellants contend that the district court abused its discretion by adopting the magistrate judge's dismissal recommendations without "affording Alpine View important jurisdictional discovery." They argue that the magistrate judge erred in limiting discovery related to attempts by ACAB and Robbins to place their products into the stream of commerce and to their actions in selling, distributing or marketing products to entities that were not parties to the suit.

Appellants' contentions assume that the district court overruled their objections to the magistrate judge's order denying in part and granting in part Appellants' motions to compel discovery. However, as the Appellants also note, the district court never explicitly ruled on those objections. As a result, we face a record that is silent on the district court's

---

[6] Because we find Appellants have not made a prima facie showing that ACAB or Robbins have the requisite minimum contacts with Texas to support personal jurisdiction, we need not review the district court's conclusion regarding whether the exercise of jurisdiction over ACAB or Robbins offends "traditional notions of fair play and substantial justice," International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945). See Wilson, 20 F.3d at 650 n.7.

disposition of Appellants' objections to the magistrate's discovery order.

Under these circumstances, we must first ensure that we have subject-matter jurisdiction to consider Appellant's challenge to the magistrate judge's discovery order. The discovery order rendered was within the magistrate judge's power to issue. See 28 U.S.C. § 636(b)(1)(A). However, such orders are not final orders under 28 U.S.C. § 1291. See Hutchinson v. Pfeil, 105 F.3d 562, 566 (10th Cir. 1997) ("Under § 636(b)(1)(A), a magistrate judge may not issue a final order directly appealable to the court of appeals."); Reynaga v. Cammisa, 971 F.2d 414, 416 (9th Cir. 1992) ("Under neither [§ 636(b)(1)(A) nor § 636(b)(1)(B)] may a magistrate issue a final order directly appealable to the court of appeals . . . ."); Glover v. Alabama Bd. of Corrections, 660 F.2d 120, 122 (5th Cir. Unit B Oct. 1981) ("The decision of a magistrate [under § 636(b)] does not meet the requirements of [§ 1291]. Subsection (b) does not grant to a magistrate the authority to render a final judgment. Only a district court can make a magistrate's decision final, and therefore appealable." (footnotes omitted)). Thus, without some indication that the district court considered and ruled on the Appellant's objections, we are without subject-matter jurisdiction over the magistrate judge's order.

We conclude that we do have subject-matter jurisdiction over

22

the discovery order.[7]  This conclusion is based on a number of facts indicated in this case.  First, Appellants filed their objections in a timely manner.  See FED. R. CIV. P. 6, 72.  Second, the Appellants restated several of their specific objections to the magistrate judge's discovery order in subsequent filings (e.g., in their Rule 72 objections to the magistrate judge's report and recommendation to dismiss for lack of personal jurisdiction).  The district court clearly ruled on the objections to the magistrate judge's report and recommendation and on subsequent motions in which objections to the magistrate judge's discovery order were described.  Third, interpreting the lack of an explicit statement on the part of the district court as a refusal to overrule the magistrate judge's order is consistent with the district court's determination to adopt the magistrate judge's dismissal recommendation.  Such consistency allows us to apply the general rule is that "appeal from final judgment opens the record and permits review of all rulings that led up to the judgment," including non-final pretrial orders.  15A CHARLES ALAN WRIGHT, ET AL. FEDERAL PRACTICE & PROCEDURE: JURISDICTION 2D § 3905.1, at 250 (1992).  The district court's judgment, based on its adoption of the magistrate judge's recommendation, is clearly a final order; the decision to deny additional discovery (i.e., allow the magistrate's order to

---

[7]  Judge Emilio M. Garza would hold that we have no subject-matter jurisdiction over the discovery order.

23

stand) arguably led up to that final judgment.[8]  We consider only those Rule 72 objections that were raised on appeal.

We have previously noted that a district court has "broad discretion in all discovery matters," Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982), and that "'such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'"  Id. (quoting Associated Metals & Minerals Corp. v. S.S. Geert Howaldt, 348 F.2d 457, 459 (5th Cir. 1965)).  Appellants argue that it was an abuse of discretion to restrict discovery given Rule 26(b)'s broad definition of relevance.  For example, they contend it was error to limit discovery related to the stream-of-commerce theory because ACAB's and Robbins' introduction of products into the stream of commerce was relevant to Appellants' assertion of specific jurisdiction and because no Fifth Circuit case had ruled out the application of the stream-of-commerce theory to a case such as this one.

We cannot say that the district court abused its discretion in dismissing Appellants' claims without affording them discovery

_____

[8]  Our conclusion that we have subject-matter jurisdiction over the discovery order issued in this case may be interpreted to suggest that parties who timely object to a magistrate judge's action have guaranteed that we have the power to review, on appeal, that action even though the district court issues no explicit ruling on the matter.  We caution against such an interpretation.  It is clear that had there been no explicit judgment adopting the magistrate judge's report and recommendation, we would not have jurisdiction.  Moreover, if the district court had decided in favor of Alpine View and Hansen on the personal jurisdiction issue and ACAB and Robbins had appealed that decision, we would face a much different case regarding our jurisdiction over the discovery issue, assuming that decision would again be challenged by Alpine View and Hansen.

24

related to ACAB's and Robbins' delivery of products into the stream of commerce. "[T]his Court affirms denials of discovery on questions of personal jurisdiction in cases where discovery sought 'could not have added any significant facts'." Wyatt, 686 F.2d at 284 (quoting Washington v. Norton Mfg., Inc., 588 F.2d 441, 447 (5th Cir. 1979)). As we suggested above, no amount of information on such contacts with Texas would strengthen Appellants' showing of specific jurisdiction, given Appellants' inability to connect such contacts to the instant litigation. We also do not find that the district court erred in not affording Appellants additional discovery related to ACAB's and Robbins' actions in selling, distributing, or marketing products to entities not parties to the suit. Such information would not have strengthened Appellants' ability to demonstrate either ACAB's or Robbins' direct contacts with Texas, or their control over entities such that their activities could be fairly attributed to Appellees for purposes of asserting general jurisdiction.

*C. Issues Concerning Claims Against Comptec and Compressors*

Appellants challenge the district court's dismissal of their claims against Comptec and Compressors for forum non conveniens, arguing that the dismissal is based on the magistrate judge's incorrect factual findings and conclusions. We review a district court's dismissal for forum non conveniens for an abuse of discretion. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257

25

(1981); <u>Dickson Marine Inc. v. Panalpina, Inc.</u>, 179 F.3d 331, 335 (5th Cir. 1999).  As a result, we follow the analysis set out in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508-09 (1947), and review the lower court's decision-making process and conclusion and determine if it acted reasonably.  See <u>Dickson Marine</u>, 179 F.3d at 335.

A court facing a motion to dismiss for forum non conveniens must first assess whether an alternate forum is both available and adequate.  As we have stated,

> A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum.  A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.

<u>In re Air Crash Disaster Near New Orleans, La.</u>, 821 F.2d 1147, 1165 (5th Cir. 1987) (citations omitted).  Based on our review of the record, it was not error to conclude that a foreign forum was available and adequate.  All four defendants agreed to submit to the jurisdiction of either Swedish or Norwegian courts, and to have either Swedish or Norwegian law apply to the instant controversy between the parties.  Appellants had agreed to submit disputes under the 1992 Agreement to arbitration in Norway, and had instituted a suit before a Norwegian arbitration panel.  In that suit, Appellants claimed breach of contract and "unlawful[] interfer[ence] in the plaintiff's business affairs and other contractual rights in China," and sought up to $54.5 million dollars in compensation.  If nothing else, this suggests that Hansen did not believe the Norwegian forum would be biased

26

against him, as he argues before us. From this and other evidence contained in the record, the court could conclude that Norway presented an adequate forum.

If an alternate forum that is both available and adequate exists, the court must next assess whether, considering relevant private interest and public interest factors, dismissal is warranted. See Dickson Marine, 179 F.3d at 342. In addition to the balancing of relevant private interest factors, the court must give "the relevant deference" to the plaintiff's choice of forum. See In re Air Crash, 821 F.2d at 1165. Appellants recognize that, as foreign plaintiffs, their initial choice of forum merits less deference than courts typically give to such decisions. See Reyno, 454 U.S. at 255; Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G., 955 F.2d 368, 373 (5th Cir. 1992). In reviewing the ultimate determination to dismiss, "where the [district] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Reyno, 454 U.S. at 257.

Our review of the lower courts' determination leads us to conclude that the decision to dismiss Appellants' claims against Comptec and Compressors was not an abuse of discretion. Appellants challenge the magistrate judge's balancing of private interest factors and the balancing of public interest factors.[9]

_____

[9] Because we find that the assessment of private interest factors supports the dismissal, we do not describe our review of the public interest factors. See In re Air Crash, 821 F.2d at

27

With respect to private interest factors, Appellants note that Compressors and Comptec are each located in the U.S., and thus contend that the court erred in finding that most of the necessary witnesses will be forced to travel great distances if the suit remained in Texas. It is the case, however, that Appellants identified not one individual in the U.S. from whom oral depositions would be taken for purposes of general discovery.[10] Appellants point to the existence of documents in the U.S., but those documents were reproduced for purposes of jurisdictional discovery. It was not error for the magistrate judge to conclude that documents necessary for determination of the merits of the case existed, for the most part, outside the U.S. Our review of the magistrate judge's consideration of other relevant private interest factors does not indicate that the district court abused its discretion in adopting the recommendation to dismiss the claims against Comptec and Compressors.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the orders of the

_____

1165 (instructing courts to consider public interest factors if they find that private interests do not weigh in favor of dismissal).

[10] It is true that the magistrate judge stated, incorrectly, that witnesses had already traveled to Norway for purposes of the arbitration. Given the other evidence weighed, we cannot conclude that this misstatement rendered the magistrate judge's recommendation, or the district court's adoption of that recommendation, unreasonable.

district court dismissing claims against Robbins and ACAB for lack of personal jurisdiction and against Comptec and Compressors for forum non conveniens.