**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-20717

FCA INVESTMENTS COMPANY,

Plaintiff-Appellant,

VERSUS

BAYCORP HOLDINGS, LTD.,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas (Houston Division)

(Civil Action No. H-00-CV-3436)

August 29, 2002

Before JOLLY, DUHÉ, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[*]

Plaintiff-Appellant FCA Investments Company ("FCA") brought this lawsuit to state claims of fraud and breach of contract against Defendant-Appellee Baycorp Holdings, Ltd. ("Baycorp"), its partner in a joint venture in New Zealand. This appeal follows the district court's dismissal of FCA's claims for lack of personal jurisdiction.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Because we find that FCA presented sufficient evidence to make out a prima facie case supporting jurisdiction in Texas and that the exercise of jurisdiction over Baycorp would not offend traditional notions of fair play and substantial justice, we REVERSE.

I.

FCA is an investment company incorporated in Delaware. Its principal place of business is in Houston, Texas. Baycorp is a financial services company organized under the laws of New Zealand. Its principal place of business is in Auckland, New Zealand.

In 1996, Baycorp's then-chairman, James Boult, solicited FCA's participation in the creation of a "small niche finance company" in New Zealand. The purpose of the venture was to establish and operate "Finance House," an entity that would pioneer the sub-prime lending market in New Zealand. Boult initially contacted FCA's president, Robert Scharar, about the venture via telephone. Later, he sent him a letter via telefax outlining the Finance House venture and Baycorp's role in its management. The letter proposed that the two meet in Houston to discuss the plan in person.

Scharar testified by affidavit that he and Boult met in Houston on September 2, 1996. They discussed the draft information memorandum about the venture that was mailed to Scharar beforehand. The memorandum contemplated that Baycorp would actively manage and operate Finance House using its management expertise and the latest information technology tools. Boult made assurances that Baycorp would carry out its responsibilities in a manner that benefitted the

2

venture and its investors. In particular, he assured Scharar that Baycorp would not use the technology developed at Finance House to compete with the venture at a later date "in any way." After further correspondence, FCA made two contributions to the Finance House venture—an initial investment of $71,000 USD and a subsequent loan of $60,000 USD. Finance House proved unsuccessful and eventually ceased to operate.

After the failure of Finance House, FCA suspected that Baycorp had improperly designed the venture to develop its expertise for later use in other business opportunities and that it was, in fact, using the technology developed at Finance House for its independent gain. FCA's suspicions were fueled by a newspaper article touting Baycorp's use of its recently developed management technologies in a new Australian venture, as well as by similar statements in Baycorp's annual corporate reports.

Unsatisfied with Baycorp's response to its inquiries, FCA filed suit in Texas state court. It alleged that Baycorp had fraudulently obtained its participation in Finance House, stating claims for fraudulent inducement, fraud, fraud in stock transaction, and breach of contract. Baycorp removed the case to federal court and moved to dismiss for lack of personal jurisdiction, asserting it did not have sufficient minimum contacts with Texas to warrant being haled into

3

court there.[1]  The district court granted Baycorp's motion without a hearing.  After the court rebuffed its motion to amend the judgment, FCA timely appealed.

## II.

We review de novo a district court's dismissal of a case for lack of personal jurisdiction.  *Alpine View Co. Ltd. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000).

## III.

A federal court sitting in diversity may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).  The Texas long-arm statute authorizes personal jurisdiction over a nonresident defendant to the extent allowed by the due process clause of the Fourteenth Amendment. *Id.*  Accordingly, we need only determine whether the district court's exercise of jurisdiction over Baycorp would be consistent with the due process clause.  *Alpine View*, 205 F.3d at 214.

The exercise of jurisdiction over a nonresident defendant comports with due process if "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend

---

[1]Baycorp withdrew its initial motion to dismiss, then filed a second motion to dismiss, which it subsequently amended.  The district court granted the amended second motion to dismiss.

traditional notions of fair play and substantial justice." *Id.* at 215. Minimum contacts can be established through contacts sufficient to give rise to either general jurisdiction or specific jurisdiction. *Id.*

FCA contends that Baycorp's contacts with Texas were sufficient to support specific jurisdiction. Specific jurisdiction is appropriate when the nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal quotation marks omitted)). Here we focus on the relationship between the defendant, the forum, and the litigation. *See Burger King*, 471 U.S. at 474, 105 S. Ct. at 2183. A single act by a defendant can be enough to establish personal jurisdiction if that act gives rise to the claim asserted. *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001). In cases alleging the intentional tort of fraud, the defendant's participation in a single telephone call is enough to establish personal jurisdiction if the content of the call gave rise to the fraud claim. *Id.* at 359; *see also Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

"Procedurally, the party invoking the jurisdiction of a federal

5

court bears the burden of establishing minimum contacts justifying the court's jurisdiction over a nonresident defendant." *Guidry v. United States Tobacco Co.*, 188 F.3d 619,625 (5th Cir. 1999). When, as happened here, a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, however, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Alpine View*, 205 F.3d at 215. "We must accept as true that party's uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.*

The uncontested facts show that Boult contacted Scharar in Houston via telephone and telefax. Baycorp sent Scharar a lengthy information memorandum outlining the proposed Finance House venture. Boult also met with Scharar in Houston to discuss the project. The unmistakable purpose of these contacts was to solicit FCA's investment in Finance House.

Supported by Scharar's affidavit, FCA claims that Boult assured Scharar during the Houston meeting that Baycorp would not use technology developed at Finance House to compete with the venture at a later date "in any way." Supported by the documents sent to Scharar in Houston, FCA also claims that Baycorp made certain representations about the state of its technological expertise and its ability to manage Finance House. FCA contends the newspaper

6

article about Baycorp's new venture in Australia shows these assurances and representations were false. FCA thus alleges that Baycorp used false assurances and misrepresentations made in, or sent to, Texas to induce its investment in Finance House to its detriment. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (stating the elements of fraud). Accepting Scharar's affidavit as true and reading FCA's supporting documents in its favor, we find FCA has made a prima facie showing that Baycorp had sufficient minimum contacts with Texas to cause FCA to suffer a tortious injury in Texas and thus to support the exercise of personal jurisdiction over it in Texas.

Once it has been determined that the defendant purposely establish minimum contacts within the forum state, the defendant must make a "compelling case" that the assertion of jurisdiction would be unfair. *Wein Air*, 195 F.3d at 215 (citing *Burger King*, 471 U.S. at 477, 105 S. Ct. 2174). In considering the fairness issue, we normally examine "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Guidry*, 188 F.3d at 630. "If a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction

likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state." *Wein Air*, 195 F.3d at 215.

Baycorp has made no showing that jurisdiction would be unfair. Rather, it merely reiterates the district court's conclusion that Texas has no interest in FCA's dispute with Baycorp. We disagree. Given the nature of FCA's allegations and the fact that FCA is a Texas resident, we find that the interests of FCA and Texas make the exercise of jurisdiction in Texas fair.

IV.

Because FCA has made a prima facie showing that Baycorp had minimum contacts with Texas and because FCA's fraud claims arise out of those contacts, we conclude the exercise of jurisdiction over Baycorp is proper in the Southern District of Texas. Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.