United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03 – 20464
SUMMARY CALENDAR
_____

R&B FALCON DRILLING (INTERNATIONAL & DEEPWATER), INC.;
CLIFFS DRILLING COMPANY,

Plaintiffs - Appellants

v.

THE NOBLE DENTON GROUP; ET AL,

Defendants

THE NOBLE DENTON GROUP; NOBLE DENTON EUROPE, LTD.;
NOBLE DENTON AND ASSOCIATES (WLL); NOBLE DENTON
& ASSOCIATES, LTD.; NOBLE DENTON QATAR,

Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Texas
(H-01-CV-3751)

_____

Before REYNALDO G. GARZA, DAVIS, and BARKSDALE, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

In this appeal, we review the district court's decision granting Defendants - Appellees',

_____

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

-1-

The Noble Denton Group, Noble Denton Europe, Ltd., Noble Denton and Associates, Noble Denton & Associates, Ltd., and Noble Denton Qatar (hereinafter collectively, "Noble Denton"), motion to dismiss pursuant to FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction. For the following reasons, we affirm the district court's decision.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs - Appellants, R&B Falcon Drilling (International & Deepwater), Inc. and Cliffs Drilling Company (hereinafter collectively, "R&B Cliffs"), build offshore oil and gas wells for oil and gas exploration. Both companies are incorporated in Delaware with their principal places of business in Houston, Texas. Noble Denton is a worldwide group of independent but affiliated companies providing consulting engineers and marine surveyors to the offshore marine industry.

In the summer of 2000, R&B Cliffs wanted to transport one of their rigs from Doha, Qatar to Salvador, Brazil. They hired Noble Denton Europe to do a "Feasibility Review and Transport Approval" for the transport of the rig. The purpose of the study was to determine if the rig could withstand the proposed voyage and to determine the proper vessel for the transport.

Prior to conducting the analysis, Noble Denton sent R&B Cliffs an "Order Acknowledgments of the Feasibility Review and Transport Approval" which included Noble Denton Europe's conditions of business stipulations. The contract included a forum selection clause stating that all disputes would be resolved in Great Britain.

Noble Denton Europe conducted the analysis from its London office, using calculations and plans provided by R&B Cliffs and Dockwise, the owner of the proposed transport vessel. On Noble Denton's recommendation, R&B Cliffs entered into a voyage charter agreement with

-2-

Dockwise and requested that Noble Denton supervise and assist in loading the rig onto the chartered vessel. Noble Denton Europe utilized the services of Noble Denton Dubai to supervise the loading.

The rig was loaded and the vessel departed for Brazil on October 17, 2000. Two weeks into the voyage, the rig was damaged and the vessel was forced to port. R&B Cliffs directed the vessel to go to Brownsville, Texas to repair the damaged rig. On January 31, 2001, Noble Denton sent R&B Cliffs an invoice for services rendered in connection with the transport, which R&B Cliffs disputed.

Unable to resolve the dispute, R&B Cliffs filed this suit, alleging claims against Noble Denton for negligence, breach of implied warranty, negligent misrepresentation, and breach of contract. Noble Denton then moved to dismiss the suit pursuant to Rule 12(b)(2), arguing that the district court lacked personal jurisdiction.

Noble Denton asserted that they lacked sufficient contacts with the state of Texas to establish specific jurisdiction, and that they lacked the requisite contacts with the United States to establish general jurisdiction pursuant to FED. R. CIV. P. 4(k)(2). Noble Denton provided affidavits claiming that each Noble Denton defendant was an independent company operating out of separate offices, not controlled by any other entity, and with no direct involvement in the daily operations of the other affiliated companies. The affidavits also claimed that none of the defendants share a parent company and are not subsidiaries of any larger group.

R&B Cliffs opposed the motion, arguing that Noble Denton had purposefully availed themselves of the benefits of the forum state. They argued that by sending the "Feasibility Review and Transport Approval" reports to Houston, Noble Denton had directed a tort toward the forum

state.  R&B Cliffs also argued that Noble Denton engaged in continuous and systematic contacts with Texas sufficient to establish general jurisdiction.  These alleged contacts include marketing directed towards Texas through a worldwide website, and Noble Denton's affiliation with the Texas company, Noble Denton Houston.  Finally, R&B Cliffs argued that Noble Denton routinely receives revenue from U.S.-based companies.

The district court granted Noble Denton's motion to dismiss, determining that R&B Cliffs failed to establish a prima facie case of jurisdiction.  The district court found that all activities giving rise to the suit occurred in London or the Persian Gulf, and that the fact that the contracts were faxed to R&B Cliffs in Houston did not, by itself, establish purposeful availment of the forum sufficient to confer jurisdiction.

The district court also determined that the foreign companies' maintenance of a passive website does not give rise to personal jurisdiction, and that the Noble Denton companies were not so interrelated that one company's actions could be imputed to another company.  Finally, the district court concluded that R&B Cliffs had not shown Noble Denton conducted regular business in the U.S. to the extent they were subject to general jurisdiction pursuant to Rule 4(k)(2).  R&B Cliffs timely appealed.

II.

STANDARD OF REVIEW

We review the district court's dismissal for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2) de novo .  *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).  Because the district court ruled on Noble Denton's motion without holding an evidentiary hearing, R&B Cliffs may satisfy their burden by presenting a prima facie case for

-4-

jurisdiction. *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 326 (5th Cir. 1996). All uncontroverted allegations by R&B Cliffs will be accepted as true, and all conflicts between the parties are resolved in favor of R&B Cliffs. *Alpine*, 205 F.3d at 215.

III.

PERSONAL JURISDICTION

The Texas long-arm statute authorizes the district court to exercise personal jurisdiction over a nonresident defendant to the fullest extent allowed by the United States Constitution. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2000); *see Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Thus, we need only determine whether exercising jurisdiction over Noble Denton is consistent with the Due Process Clause. *Alpine*, 205 F.3d at 214. Due process requirements are met when the defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In evaluating minimum contacts with the forum, we must determine whether the nonresidents purposefully availed themselves of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

To assist in minimum contacts analysis, the Supreme Court has drawn a distinction between specific and general jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 413-15 (1984). To establish specific jurisdiction, R&B Cliffs must show that Noble Denton purposefully directed their activities at residents of the forum, and the litigation must result from activities that arise out of or relate to Noble Denton's activities directed at the forum. *Burger King*, 471 U.S. at

-5-

474; *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992). To establish general jurisdiction, R&B Cliffs must show that Noble Denton's contacts with the forum are of a continuous and systematic nature. *Helicopteros*, 466 U.S. at 414-15. The district court may exercise personal jurisdiction if either specific or general jurisdiction is proven. *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 884 (5th Cir. 1993).

R&B Cliffs asserts that the district court can assert specific jurisdiction over Noble Denton because Noble Denton delivered contractual documents to Texas, which R&B Cliffs argues constitutes a tort directed at the forum state. The district court disagreed, finding that Noble Denton did not purposefully avail themselves of the benefits and protections of the forum. Noble Denton did not seek R&B Cliffs' business in Texas, rather it was R&B Cliffs who approached Noble Denton in London concerning the transport of the rig. Both the scope of the services rendered and the fee to be paid were determined in London. The work was performed in London, Qatar, and the United Arab Emirates; no work was performed in Texas.

R&B Cliffs argues that Noble Denton directed tortious conduct towards Texas by sending the contractual documents, but this argument is unavailing. An exchange of communications between two parties, one of whom is located in the forum state, in furtherance of a contract, will not generally constitute purposeful contact with the forum state for purposes of jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Coldwell Realty Investments v. Triple T Inns*, 785 F.2d 1330, 1334 (5th Cir. 1986). The district court was correct in its determination that R&B Cliffs failed to show sufficient contacts with the forum to establish specific jurisdiction.

R&B Cliffs' alternative argument is that the district court erred in determining that it could

not exercise general jurisdiction over Noble Denton. They assert that Noble Denton has marketed its services in Texas through a website and have maintained an ongoing business relationship with them over the course of twenty years. However, the maintenance of a passive website for advertising purposes does not subject a foreign company to a forum's jurisdiction absent additional contacts. *See Mink v. AAA Development LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999). Noble Denton does not directly market sales efforts to Texas-based companies, they only derive a small portion of their revenues from Texas-based companies, and visits by its employees to the U.S. were rare. The district court was correct in determining that R&B Cliffs failed to show continuous and systematic contacts with the forum so as to give rise to general jurisdiction.

Finally, R&B Cliffs contends that the district court erred in failing to find jurisdiction under Rule 4(k)(2), which allows for jurisdiction over foreign defendants with sufficient contacts with the U.S. as a whole, though not subject to the jurisdiction of any state. *See World Tanker Carriers Corp. v. M/V YA MAWLAYA*, 99 F.3d 717, 720-22 (5th Cir. 1996). R&B Cliffs argues that Noble Denton's business with them over the past twenty years is sufficient contact to establish jurisdiction under this rule. However, Noble Denton is not a single corporate entity, and R&B Cliffs' business deals with the various global entities over a number of years cannot be combined to impute sufficient contacts to each of the defendants. None of the named defendants maintains an office or accounts in the United States. Revenues from U.S.-based companies comprised only three percent of Noble Denton Europe's annual revenues in 2001, and the remaining defendants received no revenue from U.S.-based companies in the last five years. The district court was correct in declining to exercise jurisdiction over Noble Denton pursuant to Rule 4(k)(2).

IV.

CONCLUSION

For the foregoing reasons, we affirm the district court's decision.